## COMMONWEALTH OF PUERTO RICO
## COURT OF FIRST INSTANCE
## SUPERIOR HALL OF SAN JUAN

| | |
|---|---|
| **CADFI CORP;**<br>**DAVID FIGUEROA;**<br>**WILFREDO TORRES;**<br><br>**Plaintiff**<br><br><br>v.<br><br>**LUMA ENERGY, LLC; LUMA**<br>**ENERGY SERVCO LLC;**<br>**PUERTO RICO ELECTRIC POWER**<br>**AUTHORITY;**<br>**CITY OF SAN JUAN;**<br>**So-and-so 1-100**<br><br>**Defendant** | **CIVIL NO.:**<br><br><br><br><br>**REGARDING:**<br>**PETITION FOR ORDER** |

## COMPLAINT

**BEFORE THE HONORABLE COURT:**

1. Comes now CADFI Corp., also known as the Broad Coalition for Functional Diversity for Equality (hereinafter "CADFI"), Mr. David Figueroa, and Mr. Wilfredo Torres, hereinafter and jointly, "plaintiff", through the undersigned legal representation, and request a permanent injunction under 42 U.S.C. § 12188, nominal damages[1], and other remedies under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, among other legal remedies under federal law. Due to non-compliance with the provisions of Title II of the federal law known as the American with Disabilities Act, 42 U.S.C. §12131 – 12134, as well as Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. (hereinafter we refer to the federal statute as the "ADA "),[2] this claim is presented against Luma Energy, LLC and Luma Energy Servco LLC (hereinafter collectively "Luma"); the Puerto Rico Electric Power Authority;

---

[1] Nominal damages are requested under the ruling of the Supreme Court of the United States on March 8, 2021 in case Uzuegbunam v. Preczewski, *Uzuegbunam v. Preczewski*, 592 U.S. ___ (2021), 2021 WL 850106 (March 8, 2021).

[2] Title II of the ADA Law applies to all public facilities that provide services to the public, such as stadiums or arenas that are operated by a Municipality or government entities. The obligation imposed by Title II consists of not discriminating in the offer of said services towards people with [sic]. The official link of the United States government with information on Title II/ the ADA Act is: https://www.ada.gov /ada_title_II.htm.

Municipality of San Juan; So-and-so 1-100, hereinafter and jointly "defendant".

2. All the facts that give rise to this civil action took place in the Municipality of San Juan, Puerto Rico.

**PLAINTIFF**

3. The co-plaintiff CADFI is a domestic nonprofit organization or association, founded in April 2016, whose registration number with Puerto Rico's Department of State is 372420. CADFI's membership is limited to those people with functional diversity in Puerto Rico who have a physical condition that substantially limits their ability to move.

4. CADFI is an association made up exclusively of people with mobility limitations who wish to participate in society under equal conditions. CADFI members include quadriplegics, paraplegics, and people who have had amputations of one or both legs. All CADFI members frequently use wheelchairs, scooters, or vehicles to get around, and in this way, they seek their participation in society. In other words, CADFI is responsible for defending the rights of people with disabilities and carrying out social work, since its mission is to promote the right to equal opportunities, in order to achieve the social inclusion of its members, including achieving access to the sidewalks of the Municipality of San Juan.

5. The Department of Transportation and Public Works of the Government of Puerto Rico ("DTOP", in Spanish) has issued a removable tag for people with physical disabilities to the members of CADFI, so that they can use the tag to park in parking lots identified as accessible or "for disabled people". The removable placard does not have to be used on a specific vehicle nor does it have to be used on a motor vehicle registered in favor of CADFI. The people that CADFI represent have the right to use the removable placard issued by DTOP in any vehicle, be it their own, a family member's, a friend's or a vehicle that they are using in an incidental manner.

The people represented by CADFI have the right to use parking spaces designated as accessible or "for disabled people" regardless of the motor vehicle in which they are on board.

6. CADFI is filing suit in this process because the architectural system of the sidewalks of the Municipality of San Juan is being affected by the location of the poles for the conduction of energy and public lighting [3] by Luma, with the consent of the Puerto Rico Electric Power Authority.

7. This situation means that the sidewalks of the Municipality of San Juan are not accessible for people who are part of CADFI; that is, for people who have limited mobility due to their disabilities. CADFI has decided to file this civil action to challenge the conditions of the architecture of the sidewalks of the Municipality of San Juan, since the location of the aforementioned light poles, which Luma is in charge of, prevents the circulation of people with limited mobility who are members of CADFI, such as Mr. David Figueroa and Mr. Wilfredo Torres.

8. In this action, CADFI invokes standing on behalf of its members, since the interests it intends to protect are related to the objectives of the organization and the interests of each of CADFI's members; since, as indicated, only people with mobility limitations can be members of CADFI, it is clear that CADFI has a legitimate interest in protecting the rights of its members and avoiding discrimination against them. CADFI's physical address is: Carr 853 km 7.8 Bo. Barrazas Carolina, PR 00897. Its postal address is: HC2 BOX 14800 CAROLINA, PR 00987. Its telephone number is: (787) 980-7793.

9. Co-plaintiff David Figueroa: He is president and member of CADFI, whose physical address is Carr 853 km 7.8 Bo. Barrazas Carolina, PR 00897. His postal

---

3/ Hereinafter "poles", "light poles" or "energy poles".

address is: HC2 BOX 14800 CAROLINA, PR 00987. His telephone number is:
(787) 980-7793.

10. Mr. David Figueroa (the person in the image below) is a well-known activist for
the rights of people with disabilities and a university professor.



11. Mr. David Figueroa is a quadriplegic person, whose physical condition
substantially limits his mobility and several of his daily activities, as he moves
in a wheelchair. These conditions or "impairments", as indicated, substantially
limit him (compared to the majority of the population) in the following main
activities of daily living: walking, standing, lifting objects, bending, working and
others that encyclopedias, dictionaries and authoritative medical treatises have
related to the aforementioned disability.

12. Mr. David Figueroa, is a person with substantial limitations in his ability to move,
who has a specific and particular interest in the elimination of the architectural
barriers located on the sidewalks of the Municipality of San Juan, derived from the
poles installed, with the approval of the Puerto Rico Electric Power Authority,
installed by Luma (responsible for managing and operating the transmission and

distribution system of Puerto Rico's electric power).

13. In this action, Mr. David Figueroa invokes standing in his individual capacity, due to his personal and specific interest in eliminating the architectural barriers located on the sidewalks of the Municipality of San Juan, derived from the posts installed by Luma (responsible for managing and operating the Puerto Rico Electric Power transmission and distribution system), with the consent of the Puerto Rico Electric Power Authority. The co-plaintiff wants to be able to visit and transit on the sidewalks just like any other person who has no mobility impairments.

14. Co-plaintiff Wilfredo Torres: He is a person who suffers from incomplete paraplegia at the Lumbar L1 and L2 level, which substantially limits his mobility and several of his daily activities, as he moves in a wheelchair. These conditions or "impairments" substantially limit Mr. Wilfredo Torres; said physical disability substantially limits (compared to the majority of the population) the following main activities of daily living: walking, standing, lifting objects, bending over, and others that encyclopedias, dictionaries and medical treatises have related to the aforementioned disability. Similarly, Mr. Wilfredo Torres has an extensive medical history on these conditions.

15. Co-plaintiff Wilfredo Torres is a member and part of CADFI Corp. His mailing address is: Urb. Bello Monte Calle 8 L 3 Guaynabo. PR 00969 and his telephone number is (787) 637-3372.

**DEFENDANT**

16. The defendant is composed as follows:

**i.** Luma Energy, LLC: Is a legal entity, authorized to manage and operate the transmission and distribution system of the Puerto Rico Electric Power Authority, and therefore, is responsible and has the power to manage and adapt the areas where the light poles it installs are located. Luma Energy, LLC manages a public good and maintains a contract deriving from a public-private partnership with

5

the Commonwealth of Puerto Rico, through the Puerto Rico Electric Power Authority, to manage, as indicated, its electric power system.

ii.  Luma Energy Servco, LLC: Is a legal entity, authorized to manage and operate the transmission and distribution system of the Puerto Rico Electric Power Authority, and therefore is responsible and has the power to manage and adapt the areas where it locates the light poles it installs. Luma Energy Servco, LLC, manages a public good and maintains a contract deriving from a public-private partnership with the Commonwealth of Puerto Rico, through the Puerto Rico Electric Power Authority to manage, as indicated, its electric power system.

iii.  Puerto Rico Electric Power Authority: Known by its acronym, the Puerto Rico Electric Power Authority (PREPA) is a public corporation, created by Act No. 83 of May 2, 1941, as subsequently amended by Act 57 of May 30, 1979. It is an electric company responsible for the distribution and transmission of energy in the Commonwealth of Puerto Rico. It is the entity that granted LUMA's permits to manage and operate electricity.

iv.  Municipality of San Juan: It is a legal person and government entity, which has the policy, practice and custom of not taking actions to eliminate barriers on sidewalks.

v.  So-and-so 1-100: These unknown natural or legal persons are owners, operators, or administrators and are responsible for the distribution of electric power in the Commonwealth of Puerto Rico; since the identity of these is unknown at this time, the Complaint will be amended in order to join them to this civil proceeding. In this Complaint, the term "defendant" also includes all unknown defendants identified by the fictitious name "So-and-So 1-100."

**NEED FOR THE ACTION**

6

17. This Permanent Injunction Complaint is necessary due to the following: Luma is authorized to manage and operate the transmission and distribution system of the Puerto Rico Electric Power Authority; therefore, it is responsible and has the power to adapt the areas where the light poles it installs are located.

18. Luma manages a public good and maintains a contract from a public-private partnership with the Commonwealth of Puerto Rico to manage, as indicated, its electric power system.

19. The Complaint is also necessary before the Puerto Rico Electric Power Authority, since it authorizes Luma to manage and operate the power transmission and distribution system.

20. Finally, it is a necessary Complaint against the Municipality of San Juan, since it has a policy, practice and custom of not taking actions to eliminate the barriers on its sidewalks, such as the poles that it knows exist and still chooses not to intervene with.

21. The public sidewalks of the Municipality of San Juan must be accessible to people with disabilities, and their infrastructure must not be affected by the installations that Luma makes when locating the light poles, lighting poles or their equivalent.

22. Mr. Figueroa and Mr. Torres have visited the Municipality of San Juan and have personally found architectural barriers on the sidewalks of the Municipality, since the location of the light poles on the sidewalks does not allow them to transit and adequately move through them. The foregoing is due to the fact that the light poles are located in the middle of the sidewalks, and Mr. Figueroa and Mr. Torres cannot travel along the sidewalks with the wheelchairs they use, due to their disabilities.

23. Mr. Figueroa and Mr. Torres are (i) at imminent risk of encountering the architectural barriers or (ii) feel it would be futile to return to the places where these posts are located, since it would constitute a personal security risk for them

or would be equivalent to submitting to an unpleasant, humiliating and discriminatory condition or situation.

24. Mr. Figueroa and Mr. Torres have the present intention of being able to enjoy the sidewalks of the Municipality of San Juan once the architectural barriers are completely removed by the defendant. However, they reserve the right to return at any time before they are removed, even if this means submitting themselves to dangerous or discriminatory conditions, in order to search for, identify and report discrimination.

25. Mr. Figueroa and Mr. Torres, as well as the members of CADFI, feel frustrated, marginalized and discriminated against by the situation that exists. Not in a few opportunities have they put their lives in danger by having to travel through places other than the sidewalks, such as public roads for vehicles, because the poles simply prevent them from moving along the sidewalks; it is a situation that they should not continue facing, their rights and safety must be guaranteed.

26. By locating utility poles in the middle of sidewalks, Luma is ignoring the ADA's Accessible Design Standards, and omitting its duty to ensure access to the built environment for people with disabilities, as sufficient cleared space is required on the sidewalks so people with disabilities, including those using wheelchairs, can navigate them. In other words, there must be a minimum width of clear area so that these people can pass through there without encountering obstacles, which the defendant does not allow.

27. Due to the importance that sidewalks represent in the municipalities, it is transcendental that the Municipality of San Juan be concerned and take actions to maintain an adequate pedestrian infrastructure and an appropriate circulation of people, as well as guaranteed accessibility for wheelchair users to the sidewalks.

28. Therefore, it is essential to prevent sidewalks from having elements that reduce their useful width for the circulation of pedestrians and wheelchair users,

who due to their physical conditions require an infrastructure that allows them to transport themselves easily and safely.

29. In other words, Luma must rethink the location or placement of light poles, especially on sidewalks with accessible space for plaintiffs who have a disability. In turn, the Puerto Rico Electric Power Authority must ensure that the foregoing is carried out, as it is the one who authorizes and empowers Luma to take responsibility.

30. The following list, by way of representation, of limitations and barriers related to the disabilities of Mr. Torres and Mr. Figueroa, is related to and included in this Complaint, and includes the light poles that hinder the transit or mobility of people who use wheelchairs. See below the names of the avenues and/or streets where the light poles or lighting poles (or their equivalent) are located and, subsequently, their coordinates:

- **Ashford Avenue**:
  a) 18.457476403171263, -66.07521898972502
  b) 18.45732335727191, -66.07504566088974
  c) 18.45719759549315, -66.07477175360145
  d) 18.456990064972807, -66.0750009032189
  e) 18.458156083685033, -66.0756258358103
  f) 18.459947939310915, -66.07823043205424
  g) 18.460719482904153, -66.08188473020681
  h) 18.46004683035086, -66.07910277438356
  i) 18.460746722346492, -66.07938174554816
  j) 18.460705845641943, -66.08151460321896
- **Delcasse Street:**
  a) 18.456733816841584, -66.07495496464564
  b) 18.456191140014607, -66.07500287139261
  c) 18.456206405527155, -66.07501628243682
  d) 18.45672618410893, -66.07494423581029

- **Magdalena Avenue:**

    **a)**    8.456144973759592, -66.07412517253617

    **b)**    8.45611175081974, -66.07360331856039

    **c)**    18.45608307382578, -66.07343173205433

    **d)**    18.455602466125313, -66.07342814739575

    **e)**    18.4559294591732, -66.07311803205447

    **f)**    18.455878574043997, -66.07307511671303

    **g)**    18.454988797903273, -66.07146250321901

    **h)**    18.455070683255784, -66.07124588972498

    **i)**    18.45484647748895, -66.0699715743837

    **j)**    18.45525386161307, -66.07224926464565

    **k)**    18.45715912821921, -66.0747337713926

    **l)**    18.4595895773594, -66.07831113205424

    **m)**    18.45632153450222, -66.07443257438365

- **Santiago Iglesias Street:**

    a)  18.454597806123168, -66.0715185578987

    b)  18.454920229258374, -66.07163723020679

- **9 Southeast Street:**

    **a)** 18.39394877352753, -66.07814726089053

- **Tte Cesar Luis Gonzalez Avenue:**

    a)  18.392805431882355, -66.0719583536015

    b)  18.39226034587412, -66.07185897623206

- **Lucheti Street:**

    a)  18.453617576457788, -66.07033438787757

    b)  18.453828625025984, -66.06977135904224

    c)  18.45356177651733, -66.06981786088966

- **Cervantes:**

    **a)** 18.45353707654369, -66.06964268972501

- **Condado Avenue:**

    **a)** 18.45541758280313, -66.0720161743837

- **Caribe St:**

  **a)** 18.455269160073875, -66.07053011671286

- **Barranquitas Street:**

  **a)** 18.458204940593394, -66.07660781671291

- **Marseilles Street:**

  a) 18.45620642773278, -66.07549590137141

  b) 18.4562267817474, -66.07565683390179

- **Labra Street:**

  a) 18.451954541207563, -66.07303532906334

  b) 18.452079200836774, -66.07302460321907

  c) 18.451277084657594, -66.07373581801913

- **Ribot Street:**

  **a)** 18.451969605499176, -66.07401584554839

- **Wilson Avenue or close to it:**

  a) 18.45212060984129, -66.06606117438366

  b) 18.45224609681411, -66.06536068243682

  c) 18.45201870824542, -66.06378878243682

  d) 18.45260899540978, -66.06440966273729

  e) 18.452558109296476, -66.06427018787763

  f) 18.452389991550685, -66.06405837438375

  g) 18.452608077535313, -66.06354100137149

- **McLeary Avenue:**

  a) 18.452652119484778, -66.05803574255727

  b) 18.452979508771687, -66.05874414739584

  c) 18.452781708064485, -66.05782986034842

- **Atlantic Pl Street:**

  **a)** 18.453094373783244, -66.05779418918381

- **Taft street:**

  a) 18.45310769527301, -66.0602215713926

  b) 18.453314845213143, -66.06055808972509

- **Del Carmen Street:**

    **a)** 18.451084543099388, -66.0776457873263

## JURISDICTION AND COMPETENCE

31. If this civil proceeding were to be removed to the United States District Court, subject matter jurisdiction is invoked pursuant to 28 USC §§ 1331 and 1343 (a)(3) and (a)(4) for violations of the ADA.

32. The Court of First Instance has original jurisdiction to resolve controversies arising under Title II of the ADA.

## CAUSES OF ACTION
## TITLE II OF THE ADA
## AND SECTION 504 OF THE REHABILITATION ACT

33. Luma: It has a policy, practice or pattern of discrimination against people with mobility-related disabilities, who need to use the sidewalks of the Municipality of San Juan, as it places light poles in the middle of the sidewalks which makes it impossible to passage, transit or mobilize a wheelchair or scooter through the public road; that is, the sidewalk. As an example:

    i.   Luma does not design, build or locate the light poles on the sidewalks of the Municipality of San Juan in compliance with applicable federal regulations, in violation of 28 CFR § 35.150(a), (b)(1); 45 CFR § 84.22(a), (b).

    ii.  It does not develop procedures, methods or policies to locate the light poles in a manner that keeps the sidewalks in accessible conditions for people with mobility-related disabilities and fails to comply with the provisions of 28 CFR § 35.133.

34. It does not allow for the accessibility of people who use wheelchairs to move along the sidewalks of the Municipality of San Juan, due to the location and placement of the light poles on them.

35. Mr. Figueroa and Mr. Torres have historical knowledge of the barriers that Luma has included on the sidewalks of the Municipality of San Juan. Some of these are found in paragraph 29 of this Complaint along with their location, where there are poles that prevent people in wheelchairs from moving freely along the sidewalks.

36. Puerto Rico Electric Power Authority: As a public entity that authorizes

LUMA's administration or operation of the electrical system, it has failed to comply with its general duty to ensure access for people with disabilities to the services offered by the electrical energy service and to require compliance with 28 CFR § 35.150 (a), (b)(1); 45 CFR § 84.22(a), (b). and by 28 CFR § 35.133.

37. Mr. Figueroa and Mr. Torres have the right to equal treatment and to access the sidewalks of the Municipality of San Juan without encountering obstacles that impede their mobility, as indicated in Title II of the ADA, 42 USC § 12101(a)(7) ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 USC § 794, as the defendant receives federal funds. See <u>Willits v. City of Los Angeles</u>, 925 F. Supp. 2d. 1089, 1094 (CD Cal. 2013) for a discussion of applicable law.

38. Luma and the Puerto Rico Electric Power Authority systematically fail to comply with the technical requirements for the alteration of sidewalks by locating light poles in the middle of them, which means that the sidewalks are not equally available for people with mobility-related disabilities, as is the case with Mr. Figueroa, and Mr. Torres, like all other members of CADFI, and thus substantially fail to comply with 28 CFR § 35.150(a), (b)(1); 45 CFR § 84.22(a), (b).

39. Defendant's level of noncompliance is so substantial, pervasive, and systematic that persons with disabilities are at imminent risk of harm as a result of sidewalk conditions, due to Luma's placement of power poles.

40. Luma's contempt for its obligations and for the applicable regulations is clear, as it locates and accommodates the power poles in the middle of the sidewalks of the Municipality of San Juan. Luma's contempt for the damages it causes to people with disabilities who need to access to the streets and need to be able to move within the city, as in the case of Mr. Figueroa and Mr. Torres, and the members of CADFI, is equally clear.

41. Luma's disregard for its obligations is evident as:

i.   It does not locate light poles in such a way that allow for the mobility of people in wheelchairs or scooters.

ii.   When modifying the sidewalks to locate the light poles, it does not avoid affecting the available useful width of the sidewalks.

iii.   It is responsible for wheelchair users not being able to access the sidewalks of the Municipality of San Juan due to obstacles (light poles) on them.

42. The Municipality of San Juan systematically and substantially fails to comply with the technical requirements for the design, construction and alteration of the sidewalks which are subject to its jurisdiction. This makes sidewalks not equally available to persons with disabilities in violation of 28 CFR § 35.150(a), (b)(1); 45 CFR § 84.22(a).

43. The Municipality of San Juan has substantially failed to allow sidewalk access consistent with 504. 28 CFR § 35.150(c); 45 CFR § 84.22(d). The disregard of the Municipality of San Juan for its statutory obligations is confirmed by the following:

i.   Failure to develop and implement a process for the identification of sidewalks that urgently require alteration, due to the location of poles on them that hinder the transit of people with disabilities.

ii.   Failure to develop internal mechanisms and procedures for the development of sidewalks in compliance with the federal mandate, as well as the installation and operation of posts on the sidewalks.

iii.   Failure to take corrective action promptly after becoming aware of the situation of the sidewalks, which are obstructed by power poles.

44. Mr. Figueroa and Mr. Torres believe that the discriminatory practices of the defendant have been maintained for decades.

45. They also believe that the defendant has invested money in other matters that do not have to do with complying with the mandate of the ADA, at the expense of the rights of people with mobility-related disabilities.

46. Mr. Torres and Mr. Figueroa frequently visit the Municipality of San Juan and transit through its sidewalks to get around the city, which is why they have been able to identify the barriers or obstacles on the sidewalks, since they have directly faced many difficulties while trying to move independently in their wheelchairs.

47. Mr. Torres frequently visits the municipality of San Juan, since this municipality is only 19 minutes from his residence in Bayamón, and he has family in San Juan; this is why he has been able to identify the barriers or obstacles on the sidewalks. His last visit was on June 2, 2022.

48. Mr. Figueroa frequently visits the Municipality of San Juan, since this municipality is only 20 minutes from his residence (Carolina); this is why he has been able to identify the barriers or obstacles on the sidewalks. His last visit was on June 2, 2022, together with Mr. Torres.

49. Mr. Figueroa and Mr. Torres are aware of the problem with the light poles on the sidewalks of the municipality of San Juan and have a bona fide interest in making the sidewalks of this municipality accessible to themselves, as people with disabilities, as well to all other people who are in a similar position, like the other members of CADFI, who have faced these barriers as well.

50. Mr. Figueroa and Mr. Torres know that direct encounters with the Municipality's sidewalks, which have electricity poles located in the middle of them, submit them to a discriminatory, humiliating and unsafe situation. That is why they are frequently discouraged from using the sidewalks of the municipality, as they cannot do so in an equal, safe and complete manner, as any other person without mobility impediments could.

51. Mr. Figueroa and Mr. Torres maintain that feeling discouraged from using the sidewalks of the Municipality of San Juan causes damage to their daily lives, such as limiting their access to certain places via the sidewalks, through which they cannot pass, given the location of the light poles, and having to

use vehicle lanes to get around in their wheelchairs, thus exposing themselves to great risks.

52. The foregoing establishes the standing of Mr. Figueroa and Mr. Torres for claiming complete, equal and safe access to the sidewalks of the Municipality of San Juan.

53. Regardless of the foregoing, Mr. Figueroa and Mr. Torres also maintain their standing due to the multiple personal and direct encounters they have had with inaccessible sidewalks within the municipality of San Juan, due to the location of the light poles that Luma has placed.

54. Mr. David Figueroa constantly visits the municipality of San Juan, due to the fact that it is located twenty minutes from his residence, and that he finds places related to his needs and tastes, such as restaurants, care services, recreation, among others, in San Juan.

55. The foregoing has caused Mr. Figueroa and Mr. Torres to live with difficulties, discomfort, anxieties, a sense of isolation (since they are discouraged from visiting places) and a sense of danger. All of this is due to the location of the light poles on the sidewalks of the Municipality, as these do not allow them to move easily.

56. It is due to this intentional and systematic discrimination that nominal damages are requested, since sidewalks are the primary means of mobility in cities, and the social participation of people with disabilities depends on the accessibility of the environment in which they find themselves.

57. With regards to federal civil procedure <u>Faustino Xavier Betancourt Colón, et al v. City of San Juan</u>, Case No. 19-1837 (GAG) (DPR Nov 12, 2020), Judge Gustavo A. Gelpí, has decided:

> After reviewing the parties' submissions and applicable law, notably the Statement of Interest submitted by the United States, the Court rules that a public entity's provision and maintenance of sidewalks is a covered "service, program, or activity" under Title II of the ADA , 42 USC § 12132. The Court is persuaded by the reasoning in Frame v. City of Arlington, 657 F.3d 215 (5th Cir. 2011) and Barden v. Arlington. City of Sacramento, 292 F.3d 1073 (9th Cir. 2002), which thoroughly explains why this ruling is supported by the statute's plain language and its implementing regulations. See also 28 CFR §§ 35.104; 35.150(d)(2); 28 CFR Part 35, App. B at § 35.150. Finally, the Court

highlights that recent district court decisions have also found that sidewalks are covered services under Title II of the ADA. See American Council of the Blind of the City of New York v. City of New York, Civil No. 18-5792 (PAE), 2020 WL 6151251 (SDNY 2020); Hamer v. City of Trinidad, 441 F. Supp. 3d 1155 (D. Colo. 2020); Mote v. City of Chelsea, 252 F. Supp. 3d 642 (ED Mich. 2017). The undersigning judge firmly decides that: "[a]ny sensible reading of ADA Title II compels **the conclusion that maintaining public pedestrian thoroughfares for citizens to get around a city - and access the many public services and businesses located within - is the archetypal example of the most fundamental of public services**." Mote, 252 F. Supp. 3d at 655.[4] (Emphasis ours).

58. The foregoing allows us to see the importance of maintaining the sidewalks in an operable and accessible condition for people with disabilities due to their mobility, since the judge's conclusions indicate that public pedestrian roads are a fundamental means for people to move around a city -and to access the numerous public services and businesses located in it- and therefore, their good condition is one of the most fundamental public services. In this specific case, their infrastructure is being affected by Luma and the Puerto Rico Electric Power Authority, against which the Municipality of San Juan has not taken action.

59. In accord with the United States Supreme Court's decision in <u>Uzuegbunam v. Preczewski</u>, 592 US ___ (2021), 2021 WL 850106 (March 8, 2021),[5] we are seeking nominal damages under the ADA and the Rehabilitation Act. In Uzuegbunam, a student was prohibited from preaching on the campus of the University of Georgia while he was a student. In an 8-1 decision in Uzuegbunam, the United States Supreme Court concluded that Chike Uzuegbunam could claim nominal damages from Georgia Gwinnett College, even though the university changed its discriminatory policy in response to the civil action brought by him. Justice Clarence Thomas authored the majority opinion, and Justices Samuel Alito, Stephen Breyer, Amy Coney Barrett, Neil Gorsuch, Elena Kagan, Brett Kavanaugh, and Sonia Sotomayor also joined the majority opinion, ending the "tactical mootness" practice

---

4/ <u>Faustino Xavier Betancourt-Colon v. City of San Juan</u>. Case No. 19-1837 (GAG). United States District Court, D. Puerto Rico. September 1, 2020.

5/ See https://www.supremecourt.gov/opinions/20pdf/19-968_8nj9.pdf

in the context of federal causes of action. This practice consists of alleging that a violation of rights has become academic in order to request the dismissal of the entire claim. Although an injunction claim can become moot if all the requirements of the doctrine and its exceptions are met, the claim can still be kept alive by a nominal damages claim. Nominal damages represent a concrete victory for the claimant and also serve as a basis for determining who the prevailing party is. In this case, nominal damages are requested under (i) the ADA and (ii) the Rehabilitation Act.

60. Respondent has not adopted or applied appropriate administrative methods, policies, procedures and/or practices to ensure compliance with the ADA and Section 504 in order to ensure non-discrimination against persons with physical disabilities and their access and transit without barriers on the sidewalks of the Municipality of San Juan.


## REQUESTED LEGAL REMEDIES

**FOR ALL OF WHICH**, the plaintiff very respectfully requests the following legal remedies:

a) Accept jurisdiction over this matter and declare that the defendant violated Title II of the ADA Act of 1990.

b) Nominal damages amounting to one dollar for two complete and independent grounds: (1) violation of the Rehabilitation Act; (2) violation of the Americans with Disabilities Act. Nominal damages are not available for state causes of action, but they are available for federal causes of action (federal question) and the imposition of nominal damages is expressly requested under the resolution in Uzuegbunam v. Preczewski, 592 US ___ (2021).

c) A permanent injunction under Title II of the ADA that requires the Municipality of San Juan to remediate, repair, or maintain the sidewalks of the Municipality of San Juan such that they be accessible and safe for people with mobility limitations, and to make the required alterations, as well as to implement

policies and practices in favor of the elimination of the barriers on their sidewalks, which are generated by the incorrect arrangement of the poles. All of the foregoing is required by federal law, 28 CFR §§ 35.151(a), (b), (c) or (i); 45 CFR §§ 84.22; that is, relocating light poles.

d) A permanent injunction under Title II of the ADA that requires Luma to remedy, reinstall, or relocate the posts, so that they do not interfere with the free mobility of people with disabilities on the sidewalks of the Municipality of San Juan. The foregoing is required by federal law, 28 CFR §§ 35.151(a), (b), (c) or (i); 45 CFR §§ 84.22.

e) A permanent injunction under Title II of the ADA Law that requires the Puerto Rico Electric Power Authority to implement policies to monitor and control the manner in which its energy transmission and distribution system is operated and managed, so that it is guaranteed that the posts that are installed do not interfere with the complete accessibility of the sidewalks of the Municipality of San Juan, and such that they be safe for people with limited mobility, by imperative of federal legislation, 28 CFR §§ 35.151 ( a), (b), (c) or (i); 45 CFR §§ 84.22.

f) Attorney fees, costs, and litigation expenses under 42 USC 12205 and its binding interpretive case law.

g) The provision of any other remedy that is fair and proper, in law or equity, that has not been expressly requested but that proceeds as a matter of law.

**RESPECTFULLY SUBMITTED**.

Today, June 17, 2022.

> **Velez Law Group LLC**
> Civil Rights Division
>
> s/José Carlos Vélez
>
> Lic. José C. Vélez Colon
> RUA 18913
> Velez Law Group LLC
> Midtown Condominium
> 421 Ave Muñoz Rivera
> #205 San Juan, PR 00918-

3115

vlg@velezlawgroup.com

T.: (787)254-8267

Counsel for Plaintiff

Translator's Certificate:

I, <u>Sonia Crescioni</u>, U.S. Certified Court Interpreter and Translation, resident of Humacao, Puerto Rico, hereby certify that the foregoing is a true and exact translation into English of its original in Spanish.  In San Juan, Puerto Rico, today, July 27, 2022.

*Sonia Crescioni*

Sonia Crescioni, Ph.D., M.A.,

U.S. Certified Court Interpreter

T: (787)-254-8267

Counsel for the plaintiff